**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 16-23300-CIV-WILLIAMS**

BALEARIA CARIBBEAN LTD., CORP.
a/k/a BALEARIA CRIBBEAN LTD.,

Plaintiff,

vs.

HERNAN CALVO,

Defendant.
_________________________________/

**SEALED ORDER**

**THIS MATTER** is before the Court on Plaintiff's *Ex Parte* Request for seizure under 18 U.S.C. 1836(b)(2) and temporary restraining order under Rule 65 of the Federal Rules of Civil Procedure (DE 4) and an *Ex Parte* Hearing held on August 4, 2016 at 10:00 a.m. Because Plaintiff has satisfied the requirements for the issuance of a temporary restraining order but not the requirements for the issuance of an *ex parte* seizure pursuant to 18 U.S.C. § 1836(b)(2), the *Ex Parte* Request (DE 4) is **GRANTED IN PART AND DENIED IN PART**.

## I. BACKGROUND

Plaintiff Balearia Caribbean Ltd., Corp. ("BCL") brings a Verified Complaint against its former Chief Executive Officer, Hernan Calvo, alleging that Calvo misappropriated its trade secrets "as part of a months-long scheme by Calvo enacted just prior to his planned departure." (DE 1 ¶ 8). Calvo became BCL's CEO in February 2013. (DE 1 ¶ 14). Over a year later on November 6, 2014, Calvo notified BCL's Director of Information Systems that he had purchased a personal Mac laptop computer and requested technical assistance to reconfigure this device to access Balearia's

electronic information systems. (DE 1 ¶ 15). Later the next year, on March 30, 2015, Calvo began negotiating on behalf of BCL with Genting Group ("Genting") to enter into an arrangement where BCL would provide ferry service between Miami and a Genting-owned casino in Bimini, Bahamas. (DE 1 ¶¶ 24-25). Several months into these negotiations, on July 1, 2015, Calvo "secretly inserted an electronic command into his [BCL] email addresses . . . which ensured that all email communications received by Calvo at his [BCL] email addresses would be surreptitiously forwarded in their entirety to a private Gmail account Calvo had set up." (DE 1 ¶ 26). Three days later, Calvo "unilaterally called off negotiations with Genting" but "did not inform anyone at [BCL] of his instituted 'delay' in negotiations with Genting." (DE 1 ¶ 27). The next month, on August 14, 2015, Calvo called a superior at BCL's parent company, Adolfo Utor, to advise that he was planning to resign his position as CEO to move into a different industry. (DE 1 ¶ 28). During this conversation, Calvo agreed to stay on as BCL's acting CEO until October 30, 2015 and to train his replacement and keep his replacement "fully informed of Calvo's day-to-day undertakings as CEO." (DE 1 ¶ 29).

Then, on August 29, 2015, Calvo—unbeknownst to his replacement or to anyone else at BCL and acting as the exclusive negotiating agent for BCL—responded to an August 26, 2015 inquiry from Genting setting a September 8, 2015 meeting to continue discussions with Genting about the Miami to Bimini ferry service. (DE 1 ¶¶ 30-32). About a week later on September 5, 2015, Calvo began requesting proprietary BCL financial information and reports from employees in his capacity as acting CEO and using his BCL email address. (DE 1 ¶¶ 35-39). BCL alleges that Calvo has and continues to have access to this sensitive information, plus correspondence regarding

BCL's negotiations with Genting, through Calvo's private Gmail account and the earlier instruction Calvo set up on his BCL email addresses to forward all incoming messages to that Gmail account. (DE 1 ¶ 39).

Calvo resigned as BCL's CEO on October 30, 2015. He repeatedly advised Utor at BCL's parent company that he "would not be engaging in any activity after his departure that would be competitive with [BCL] in the geographic zones where [BCL] operates" and told colleagues that he was "leaving the ferry business and would be dedicating himself to a new business." (DE 1 ¶ 40). Months later, on January 8, 2016, Genting approached BCL to renew negotiations for a Miami to Bimini ferry service, but "nobody at [BCL] could locate [BCL's] internal file for the Genting Ferry Deal or any information about the history of the negotiations over the Genting Ferry Deal, which had been kept exclusively by Calvo as the sole [BCL] negotiator for the Genting Ferry Deal." (DE 1 ¶ 42).

Accordingly, on March 15, 2016, Utor emailed Calvo asking him about the Genting negotiations. (DE 1 ¶ 43). In this same email, Utor expressed concern about rumors he had heard that Calvo independently contacted Genting to consummate a deal for a Miami to Bimini ferry service on behalf of a BCL competitor, Silvia Ana. (DE 1 ¶ 43). Calvo responded the next day claiming he had "no idea what was going on with the Genting Ferry Deal" and that he would report back to Utor if he learned of anything. (DE 1 ¶ 44). He never contacted Utor. (DE 1 ¶ 44). Utor followed up with several emails reminding Calvo of "his agreement to not act against the interests of [BCL]" to no response. (DE 1 ¶ 45). Three months later, on June 21, 2016, Genting informed BCL that it had executed an agreement for a Miami to Bimini ferry service with FRS-Fast

Reliable Services LLC, a subsidiary of BCL's competitor Förde Reederei Seetouristik GmbH & Co (collectively, "FRS"), including certain terms that BCL claims were attributable to Calvo's assistance or direction based on misappropriated information and knowledge that Calvo acquired during his time at BCL. (DE 1 ¶¶ 46, 50-51, 52). The same day, BCL obtained a photograph of the ferry that FRS apparently planned to use to operate its Miami to Bimini ferry service. (DE 1 ¶ 53). The ferry had an internet domain name painted on the side which is registered to a company that Calvo owns. (DE 1 ¶ 53). Also on that same day, BCL sent a cease-and-desist letter to Calvo and FRS, to which FRS responded on June 23, 2016 acknowledging that FRS had a business relationship with Calvo and Genting. (DE 1 ¶ 54).

BCL now files this motion for a temporary restraining order enjoining Calvo from modifying, forwarding, transferring or destroying any of BCL's proprietary information in Calvo's possession. BCL also requests an *ex parte* seizure, pursuant to the Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. § 1836(b)(2), of Calvo's personal Mac laptop computer so that a forensic expert retained by Plaintiff can image the hard drive of that computer to "provide factual basis for further orders from this Court regarding instructions to review the contents of the Laptop hard drive and/or safeguard any protected and proprietary information of [BCL] in Calvo's possession." (DE 4 at 15-16).

## II. LEGAL STANDARD

### A. *Ex Parte* Seizure Order

In order to justify an *ex parte* seizure order, the moving plaintiff must meet an exacting standard: "When the defendant's identity is known and notice could feasibly be given, *ex parte* seizures are proper only if providing notice to the defendant would

render fruitless the further prosecution of the action." *AT&T Broadband v. Tech Commc'ns, Inc.*, 381 F.3d 1309, 1319 (11th Cir. 2004) (affirming *ex parte* seizure order in the context of the Cable Communications Policy Act) (internal quotation marks and citation omitted). Under the recently enacted DTSA, the Court may only issue an *ex parte* seizure order in "extraordinary circumstances"[1] and only after making eight factual findings: (1) an order issued pursuant to Rule 65 of the Federal Rules of Civil Procedure would be inadequate; (2) an immediate and irreparable injury would occur if seizure is not ordered; (3) the harm to the movant from denial of the order outweighs the harm to the legitimate interests of the person against whom seizure would be ordered, and substantially outweighs the harm to any third parties; (4) the movant is likely to succeed in showing that the information is a trade secret and the person against whom seizure would be ordered misappropriated the trade secret by improper means or conspired to use improper means to do so; (5) the person against whom seizure is to be ordered has actual possession of the trade secret and the property to be seized; (6) the motion describes with reasonable particularity the matter to be seized and identifies, to the extent practicable, the location where the matter is to be seized; (7) the person against whom seizure would be ordered, or persons acting in concert, would destroy, move, hide, or otherwise make such matter inaccessible to the court if the movant were to proceed on notice; and (8) the movant has not publicized the requested seizure. *See* 18 U.S.C. § 1836(b)(2)(A).

---

[1] During proceedings in the Senate prior to the DTSA's passage, Senator Grassley described these "extraordinary circumstances" as "instances in which a defendant is seeking to flee the country or planning to disclose the trade secret to a third party immediately or is otherwise not amenable to the enforcement of the court's orders." 162 Cong. Rec. S1631-02, S1634 (Apr. 4, 2016).

**B. Temporary Restraining Order**

In order to obtain a temporary restraining order, a party must demonstrate that there is "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005). Additionally, a court may only issue a temporary restraining order without notice to the adverse party or its attorney if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition [and] (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b). *Ex parte* temporary restraining orders "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing and no longer." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameida Cty,* 415 U.S. 423, 439 (1974).

## III. DISCUSSION

For the reasons below and the reasons discussed at the *Ex Parte* Hearing, the Court denies BCL's motion to the extent it requests an *ex parte* seizure, but grants the motion to the extent it requests a temporary restraining order and limited expedited discovery.

**A. *Ex Parte* Seizure**

The Court has discretion to order an *ex parte* seizure pursuant to the DTSA only

if it finds that "it clearly appears from specific facts that . . . an order issued pursuant to Rule 65 of the Federal Rules of Civil Procedure or another form of equitable relief would be inadequate to achieve the purpose" of the seizure order "because the party to which the order would be issued would evade, avoid, or otherwise not comply with such an order." 18 U.S.C. § 1836(b)(2)(A)(ii)(I). Similarly, the Court must also find that it "clearly appears from specific facts" that "the person against whom seizure would be ordered, or persons acting in concert with such person, would destroy, move, hide, or otherwise make such matter inaccessible to the court, if the applicant were to proceed on notice to such person." 18 U.S.C. § 1836(b)(2)(A)(ii)(VII).

In making such showings in similar circumstances, a plaintiff "may not rely on bare assertions that the defendant, if given notice, would destroy relevant evidence. Rather, the plaintiff must show that the defendant, or persons involved in similar activities, had concealed evidence or disregarded court orders in the past." *AT&T Broadband*, 381 F.3d at 1319 (internal quotation marks and citation omitted). For example, courts have ordered *ex parte* seizure of counterfeit goods or business records in the Lanham Act context where destruction of evidence is likely and where entities similar to the defendants had a history of destroying evidence and disobeying court orders. *See SATA GmbH & Co. Kg v. Wenzhou New Century International, Ltd.*, Case No. CV 15-08157-BRO (Ex), 2015 WL 6680807, at *10 (C.D. Cal. Oct. 19, 2015) (ordering *ex parte* seizure of counterfeit paint reservoirs where "similarly situated defendants in analogous trademark infringement cases have a history of disposing of counterfeit goods and refusing to comply with court orders"); *Dell Inc. v. BelgiumDomains, LLC*, No. Civ. 07-22674, 2007 WL 6862341, at *1-2 (S.D. Fla. Nov.

21, 2007) (granting *ex parte* seizure of items and business records kept by the defendants pursuant to 15 U.S.C. § 1116(d)(1)(A) and 1116(d)(4)(B)).

Here, BCL bases its request for *ex parte* seizure on the meticulously planned and allegedly nefarious nature of Calvo's misappropriation. From these allegations, BCL deduces that "there is no reason to suspect that Calvo will cease . . . impropriety at this late juncture" (DE 4 at 6) and that, if given notice prior to seizure of his personal Mac laptop computer, Calvo will likely make evidence inaccessible to the Court. BCL also argues that Calvo is likely to destroy, move, hide, or make inaccessible evidence because he possesses that evidence "in electronic format, in email communications and Excel spreadsheet attachments to email communications" and because this type of electronic data "can easily be transferred or hidden between and amongst various electronic devices." (DE 4 at 12). But these assertions do not constitute the "extraordinary circumstances" contemplated by the DTSA or meet the standards set forth in decisions regarding *ex parte* seizures in other contexts. *See AT&T Broadband*, 381 F.3d at 1319; *SATA*, 2015 WL 6680807, at *10-11; *Dell,* 2007 WL 6862341, at *1-2. Consequently, the Court declines to issue an *ex parte* seizure order here.[2]

Nonetheless, because of the unique facts of this case, the showing of irreparable injury and potential harm demonstrated by BCL, *see infra*, and Calvo's alleged efforts to conceal his misappropriation activities from detection, the Court will treat the request for *ex parte* seizure as a request for expedited discovery—specifically, production of Calvo's personal Mac laptop computer identified in the Verified Complaint and the *Ex*

---

[2] Because BCL has not provided sufficient evidence for the Court to make two of the eight required factual findings for issuance of an *ex parte* seizure order, the Court does not analyze whether the allegations in the Verified Complaint satisfy the six other factual findings required by the DTSA.

*Parte* Request. *See Wit Walchi Innovation Techs., GMBH v. Westrick*, No. 12-CIV-20072, 2012 WL 33164 (S.D. Fla. Jan. 6, 2012) (granting *ex parte* motion for temporary restraining order and ordering the defendant to return a company-issued laptop to the plaintiff company in context of alleged violations of the Computer Fraud and Abuse Act); *F.T.C. v. Prime Legal Plans LLC*, No. 12-61872-Civ., 2012 WL 4854762 (S.D. Fla. Oct. 12, 2012) (granting *ex parte* motion for temporary restraining order and limited expedited discovery in context of alleged violation of FTC Act); *Chanel, Inc. v. David Trading Co.*, No. 08-CV-22365, 2008 WL 4874151 (S.D. Fla. Nov. 12, 2008) (granting *ex parte* application for temporary restraining order and expedited discovery in context of alleged violation of Lanham Act).

**B. Temporary Restraining Order**

Although BCL has not shown the "extraordinary circumstances" required for the issuance of an *ex parte* seizure order, it has set forth a sufficient predicate to warrant the entry of a temporary restraining order. The Verified Complaint brings four counts: (1) damages for misappropriation of a trade secret under 18 U.S.C. § 1836(b); (2) breach of duty of loyalty under Florida Statute § 607.0831; (3) common law breach of fiduciary duty; and (4) a permanent injunction for misappropriation of a trade secret under 18 U.S.C. § 1836(b)(3)(A). These counts are based on verified allegations that Calvo used his position as BCL's CEO to obtain BCL proprietary information, and then used that information to help a rival company sign a deal with a former BCL negotiating partner. At this stage of the proceedings, these allegations are sufficient to support a substantial likelihood of success on the merits for three of the four counts.

BCL argues both that the sensitive profit and loss statements, negotiations

history, and sales reports Calvo improperly obtained were "trade secrets" and that Calvo's conduct therefore constituted a violation of the DTSA. (DE 4 at 9-10). These arguments are sufficient to show substantial likelihood of success on the merits as to Counts I and IV. The verified allegations are also sufficient to show substantial likelihood of success on the merits as to Count III, as the common law "fiduciary duty of loyalty describes corporate officers' and directors' obligation to 'avoid fraud, bad faith, usurpation of corporate opportunities and self-dealing.'" *F.D.I.C. v. Dodson*, No. 4:13-CV-416-MW-CAS, 2014 WL 11511068, at *6 (N.D. Fla. Feb. 27, 2014) (citing *F.D.I.C. v. Gonzalez-Gorrondona*, 833 F. Supp. 1545, 1549 (S.D. Fla. 1993)); *accord U.S. v. De La Mata*, 266 F.3d 1275, 1293 (11th Cir. 2001). Accordingly, at this stage in the proceeding, BCL's allegations are sufficient to demonstrate likelihood of success on Counts I, III, and IV of the Verified Complaint.[3]

Moreover, BCL has made a sufficient showing on the likelihood of irreparable injury if the Court does not grant the Temporary Restraining Order. In the context of the DTSA, "[e]vidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm." *Henry Schein, Inc. v. Cook*, No. 16-CV-03166-JST, 2016 WL 3212457, at *3 (N.D. Cal. June 10, 2016) (citation omitted). In this case, BCL claims that Calvo is currently in possession of its trade secrets, has already used those trade secrets to divert a corporate opportunity to FRS, and continues to maintain possession of those secrets for possible use in conjunction

[3] As to Count II, Florida Statute § 607.0831 applies to directors of corporations. The Verified Complaint alleges, and counsel confirmed at the *Ex Parte* Hearing, that Calvo was a corporate officer at BCL, but not a director. Consequently, although BCL has established a substantial likelihood of success on the merits as to all other counts of the Verified Complaint, it is unclear whether BCL is substantially likely to succeed as to Count II.

with other BCL competitors. These verified allegations are sufficient to demonstrate irreparable harm pursuant to the DTSA and sufficient to demonstrate irreparable harm from Calvo's alleged breach of fiduciary duty.

Finally, on balance of hardships, the harm to Calvo from entry of this Order—the requirement that Calvo not destroy or disseminate information that is alleged to have been wrongfully obtained and temporarily turn over his personal Mac laptop computer for imaging of its hard drive—is small in comparison to the threatened injury to BCL described above. Accordingly, the Court finds that entry of a Temporary Restraining Order would serve the public interest by preserving evidence and protecting BCL's potentially proprietary information until both Parties have the opportunity to be heard.

## IV. CONCLUSION

For the reasons above and as discussed at the *Ex Parte* Hearing, it is **ORDERED AND ADJUDGED** that the *Ex Parte* Request (DE 4) is **GRANTED IN PART AND DENIED** as follows:

1. Pending a hearing and determination on the merits of a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure, Defendant is temporarily restrained and enjoined from destroying, modifying, forwarding, utilizing, disposing of, or in any other manner changing/altering or dismantling any proprietary information of Balearia Caribbean in Defendant's possession.

2. Defendant is further temporarily restrained and enjoined from destroying, altering, modifying, dismantling, or otherwise disposing of the personal Mac laptop computer referenced in the Verified Complaint (DE 1) and the *Ex Parte* Request (DE

4).[4]

3. The Parties shall appear before the Honorable Kathleen M. Williams on **August 8, 2016 at 3:30 p.m.** at 400 North Miami Avenue, Courtroom 13-4, Miami, Florida for a hearing pursuant to Rule 53(b)(1) of the Federal Rules of Civil Procedure. Following this hearing, the Court intends to appoint a master pursuant to Rule 53 of the Federal Rules of Civil Procedure to take temporary custody of the aforementioned Mac laptop computer owned by Defendant for the limited purpose of having a forensic computer expert create an image of the hard drive of the computer; placing the image of the hard drive in a sealed evidence bag and maintaining the image in the custody of the master, pending agreement amongst the parties, or future Court order, regarding the proper scope and terms of review of the image; and immediately returning Defendant's Mac laptop computer to Defendant upon completion of the imaging of its hard drive.

4. The Parties shall appear before the Honorable Kathleen M. Williams on **August 15, 2016 at 11:00 a.m.** at 400 North Miami Avenue, Courtroom 11-3, Miami, Florida for a hearing and determination on the merits of a preliminary injunction enjoining Defendant from using, moving, forwarding, modifying, or destroying any proprietary or confidential information of Plaintiff that is within Defendant's possession, during the pendency of this action.

5. This Temporary Restraining Order shall remain in effect until the date for the hearing on the preliminary injunction set forth above, or until such further dates as set by the Court or stipulated to by the Parties;

---

[4] The *Ex Parte* request names the likely location of the Mac laptop computer in question as Calvo's office located at 201 South Biscayne Boulevard, Office 2808, Miami, Florida 33131. Alternatively, the computer may be located at Calvo's home address, 4 Turtle Walk Drive, Key Biscayne, Florida 33149.

6. The sealed nature of this matter and this Order notwithstanding, immediately upon receipt of this Sealed Order, Plaintiff shall serve a copy of the Verified Complaint, the *Ex Parte* Request, and all other documents in the record on Defendant and on known counsel for Defendant.

7. Based on the unique facts of this case, the Court concludes that no security is required under Rule 65 of the Federal Rules of Civil Procedure, as the "purpose of the Motion is to maintain the status quo" with regards to the evidence. *See Variable Annuity Life Ins. Co. v. Antoniadis*, No. 8:12-cv-1980-T-33MAP, 2012 WL 3779003 (S.D. Fla. Aug. 31, 2012).

**DONE AND ORDERED** in Chambers in Miami, Florida, this 5th day of August, 2016 at 10:25 a.m.

KATHLEEN M. WILLIAMS
UNITED STATES DISTRICT JUDGE

cc: Brett A. Barfield, Brian A. Briz, Daniel P. Hanlon, and George Mencio, Jr.
Holland & Knight LLP
701 Brickell Avenue
Suite 3000
Miami, FL 33131